**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCES Y. BEAMESDERFER, | CASE NO. ED CV 17-0868 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Frances Y. Beamesderfer ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 9, 10, 18). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On November 27, 2012, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, alleging a disability onset date of November 1, 2011. (AR 146-49). The Commissioner denied Plaintiff's applications initially and on reconsideration. (AR 70-94). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (AR 107-08), which took place on April 30, 2015 (AR 35-69). The ALJ issued an adverse decision on October 27, 2015, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that she can perform. (AR 13-30). On March 14, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on May 4, 2017.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on February 7, 1951. (AR 146). She was sixty-four (64) years old when she appeared before the ALJ on April 30, 2015. (AR 35). Plaintiff completed high school and has an associate's degree. (AR 162, 383). She is divorced and has four children, one of whom lives with her. (AR 147, 169-79, 383). Plaintiff previously worked as a laboratory assistant. (AR 162-63). She alleges disability due to bipolar disorder,

blackouts, depression, anxiety, panic attacks, lower back pain, heart arrhythmia, high blood pressure, and insomnia. (AR 161).

## A.  **Plaintiff's Testimony**

Plaintiff testified that she is unable to work due to pain and confusion caused by her fibromyalgia. (AR 44). Her fibromyalgia was apparently diagnosed twenty years ago, but she does not see a physical therapist and has never seen a rheumatologist. (AR 40-41). She is unable to stand for longer than twenty minutes but can sit for hours. (AR 44). In Plaintiff's pain and function reports, she alleged whole body pain and claimed that walking, shopping, and performing household chores exacerbates her pain. (AR 216-17). She is unable to walk more than a half block before needing to rest. (AR 212). She further alleged that her impairments cause difficulty squatting, bending, walking, climbing, remembering, completing tasks, and concentrating. (AR 212). She is unable to pay attention for more than five minutes. (AR 212).

Plaintiff sees her psychiatrist monthly and reported that her medications are working. (AR 42-43). She does not experience side effects from her medications. (AR 42-43, 44). Plaintiff's bipolar disorder causes difficulty understanding and following instructions. (AR 175).

The ALJ found Plaintiff's allegations "less than fully credible." (AR 20). The ALJ concluded that the objective evidence

did not support the severe, debilitating limitations alleged by Plaintiff. (AR 20). Instead, Plaintiff received only routine and conservative treatment throughout the period at issue. (AR 20). Moreover, Plaintiff's described daily activities and an ability to live on her own indicated a normal level of activity and interaction. (AR 20). Finally, the medical records indicate that Plaintiff's outpatient treatments, including medication and psychotherapy, have moderated Plaintiff's bipolar symptoms. (AR 21). The ALJ found that "while [Plaintiff has] some functional limitations due to her impairments, they are not severe enough to render her disabled." (AR 21).

**B.    Treatment History**

    Plaintiff has been diagnosed with hypothyroidism and fibromyalgia. (AR 369). Laboratory testing in July 2012 revealed that Plaintiff's thyroid stimulating hormone levels were within the normal range. (AR 366). Plaintiff received routine, conservative, and infrequent treatment for her fibromyalgia. (AR 391-453, 478-93). The ALJ found no evidence Plaintiff ever saw a rheumatologist or other expert for this disease. (AR 22). Treatment notes indicate that Plaintiff has a history of blackout spells of unknown etiology, a history of mitral valve prolapse, and hypertension, which have all been controlled with medications. (AR 311, 348, 391, 406, 495).

    With regard to Plaintiff's mental impairments, she has had various diagnoses, including bipolar disorder, depression, and

4

psychotic disorder.  (AR 382-87).  Plaintiff has regularly attended psychotherapy sessions and was prescribed medications.  (AR 454-77, 543-77, 588-623).  While Plaintiff has occasionally reported temporary exacerbations, her mental impairments have been largely controlled with her treatment regimen.  (AR 454-77, 543-77, 588-623).

The ALJ gave great weight to the opinion of the state agency mental medical consultant.  (AR 25).  The medical consultant found that due to Plaintiff's bipolar disorder, she has mild restriction of activities of daily living, and moderate difficulties in maintaining concentration, persistence or pace.  (AR 87).  The consultant further opined that Plaintiff is capable of performing simple, routine tasks with limited social interactions.  (AR 88).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel,

180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 16-30). At step one, the ALJ

7

found that Plaintiff met the insured status requirements through December 31, 2016, and has not engaged in substantial gainful activity since November 1, 2011, the alleged disability onset date. (AR 16). At step two, the ALJ found that Plaintiff's obesity, bipolar disorder, depression, psychotic disorder, anxiety disorder, hypertension, hypothyroidism, history of lap band surgery and adjustment, history of blackout spells of unknown etiology, history of mitral valve prolapse, and fibromyalgia are severe impairments. (AR 16). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (AR 17).

The ALJ assessed Plaintiff's RFC and concluded that she can perform medium work, as defined in 20 C.F.R. § 404.1567(c),[1] except:

> [Plaintiff] can no to [sic] rarely climb ladders, ropes, or scaffolds; she can no to [sic] rarely use moving machinery; she can no to [sic] rarely have exposure to unprotected heights; she can perform unskilled work at all reasoning levels pertaining to unskilled work as set forth in the Dictionary of Occupational Titles; and she

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

can have superficial and no direct interaction with the
public.

(AR 19).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 26).  Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including sweeper/cleaner, floor waxer, and laundry worker.  (AR 27-28).  Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act from November 1, 2011, through October 27, 2015, the date of the ALJ's decision.  (AR 29).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v.

*Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  (*Id.*).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Aukland*, 257 F.3d at 1035 (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  *Reddick*, 157 F.3d at 720-21 (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ erred by relying on the VE's testimony to fulfill the Agency's step-five burden without properly addressing Plaintiff's objections to the evidence.  (Dkt. No. 15-2 at 5).  She argues that the ALJ failed to address her objection "to the classification of the jobs relied upon by the ALJ as 'unskilled' based on up to date and reliable job information as to how these positions are performed in the economy today."  (*Id.*).  Plaintiff contends that it is a "well-known fact that the Dictionary of Occupational Titles (DOT) is an obsolete and static database that is no longer being developed or enhanced by the United States Department of Labor (USDOL); in fact, it has not been updated since 1991, and the type of information once provided via

the DOT is now being provided by the USDOL via 'O*NET.' " (Id. at 10).

## A. **Applicable Law**

At step five of the five-step process, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). The Commissioner may satisfy that burden either through the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. part 404, subpart P, appendix 2. Lounsbury, 468 F.3d at 1114.

When the services of a VE are used at step five, an ALJ may call upon the VE to testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101. In doing so, an ALJ "poses hypothetical questions to the [VE] that set out all of the claimant's impairments for the [VE's] consideration." Id. (citation omitted). When a hypothetical includes "all of the limitations that the ALJ found credible and supported by substantial evidence in the record," then the ALJ may properly rely on the VE's response. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The Federal Rules of Evidence do not apply to the admission of evidence in

11

Social Security administrative proceedings.  Id. at 1218 n.4.  A VE's "recognized expertise provides the necessary foundation for his or her testimony.  Thus, no additional foundation is required." Id. at 1218.

## B.   Relevant Facts

On or about February 11, 2015, Plaintiff was informed that Mary Jesko, Ed.D., would be testifying at Plaintiff's hearing as a vocational expert ("VE").  (AR 133; see AR 258).  On April 1, 2015, the VE submitted a copy of her curriculum vitae ("CV") to become part of Plaintiff's administrative record.  (AR 250-52).

### 1.   Pre-Hearing Memorandum

On April 23, 2015, Plaintiff's counsel requested that the VE be required to bring to the hearing documents upon which the VE may rely in forming her opinions as to the number of jobs available in the national economy.  (AR 258).  Alternatively, Plaintiff's counsel requested that prior to the hearing, the VE be required to provide counsel with the data sources upon which the VE intends to rely to form her opinions regarding job numbers in the local, regional, or national economy.  (AR 259).  Finally, counsel advised the ALJ of Plaintiff's "standing objections" to the VE testifying regarding the number of jobs that exist nationally, regionally, or locally.  (AR 259-60).  Based on counsel's review of the VE's CV, counsel asserted that "it is clear Ms. Jesko does not have any training, education, or experience that would qualify him [sic] to

make extrapolations or reach conclusions from the various data sources available as to the number of DOT jobs that exist in a locality, a region, or the nation." (AR 260).

## 2. Hearing

At Plaintiff's April 30, 2015 hearing, the VE testified that she is familiar with the definitions of the exertional requirements of work and the skill levels contained in the DOT. (AR 46). The VE acknowledged that if her opinion conflicts with the DOT, she must advise the ALJ of the conflict and the basis for her opinion. (AR 46). The VE stated that in addition to using the DOT, she also relies on a computer program known as SkillTRAN to analyze a combination of the data contained in other job sources, including the Occupational Outlook Handbook ("OOH"), the standard occupational classification ("SOC") codes, the County Business Patterns, and census reports. (AR 47-49). The VE indicated that she analyzes industry changes since the last DOT review of the SOC codes as it relates to individual jobs. (AR 48). Because there is no government source that provides job numbers by DOT occupations, a VE must do a "reasonable extrapolation" based on the above sources. (AR 49). The VE further explained:

> The labor market is a very unwieldy thing in that it changes from quarter to quarter and day to day. And the [SOC] codes that are provided sometimes bundle numbers within a number of different DOT codes. You can extrapolate out the codes and do reasonable estimates by

13

looking at triangulated data to reduce the numbers within
a particular bundle of codes. . . . So from that you
can look at industry trends, reduce the numbers
accordingly and then from there you erode the numbers
further.

(AR 48-49). Following this colloquy, Plaintiff's non-attorney representative stated that he had no objections to Ms. Jesko serving as the VE in this matter. (AR 50).

The ALJ then proposed several hypotheticals to the VE. (AR 51-55). As relevant to this matter, the VE testified that a person with Plaintiff's RFC could perform the following jobs:

Sweeper/cleaner, DOT code 389.683-10, a medium, unskilled (SVP 2) occupation, with 96,500 positions in the national economy.[2]

Floor waxer, DOT code 381.687-034, a medium, unskilled (SVP 2) occupation, with 97,000 positions in the national economy.

---

[2] A job's specific vocational preparation ("SVP") rating "speak[s] to the issue of the level of vocational preparation necessary to perform the job." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (citation omitted). "An SVP of 2 reflects that the position would require anything beyond a short demonstration up to and including 1 month of training, i.e., unskilled work." Losoya v. Berryhill, No. CV 16-8967, 2017 WL 4564701, at *5 (C.D. Cal. Oct. 11, 2017) (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 416.968(a)).

1　　　　　　Laundry worker I, DOT 361.684-014, a medium, unskilled

2　　　　　　(SVP 2) occupation, with 38,500 positions in the national

3　　　　　　economy.

4

5　(AR 53-54).  The VE confirmed that her testimony was consistent

6　with the DOT.  (AR 54).

7

8　　　　　The ALJ provided Plaintiff's representative ample opportunity

9　to question the VE.  (AR 55-69).  Upon examination by Plaintiff's

10　representative, the VE confirmed that the information she testified

11　to was based on "current job numbers."  (AR 56).  The VE reiterated

12　that she reviewed quarterly census statistics, population surveys,

13　and other current employment statistics to confirm that her

14　analysis using the SkillTRAN program was producing reliable jobs

15　information.  (AR 61-62).  She also verifies her job numbers with

16　Department of Labor ("DOL") statistics and conducts ongoing,

17　independent studies to support her opinions.  (AR 65-66).

18

19　　　**3.　　Post-Hearing Memorandum**

20

21　　　　　On June 2, 2015, Plaintiff's counsel submitted a post-hearing

22　memorandum, objecting to multiple portions of the VE's testimony.

23　(AR 264-93).  As relevant to this matter, counsel asserted that

24　the jobs of sweeper/cleaner and floor waxer involve the operation

25　of machinery, in contrast to Plaintiff's RFC, which restricts her

26　to "never to rarely operate moving machinery."  (AR 268).  Further,

27　counsel argued that the jobs of sweeper/cleaner, floor waxer, and

28　laundry worker are all now classified by the DOL through its O*NET

database as SVP 4-6, "making them semiskilled to skilled work in stark contrast to the DOT's classification as SVP 2." (AR 268-69).

### 4. ALJ's Decision

In her decision, the ALJ directly addressed the arguments from Plaintiff's pre-hearing and post-hearing memoranda. (AR 13-14, 28-29). First, in response to the pre-hearing memorandum's request for the VE's data sources, the ALJ noted that the VE was notified prior to the hearing that her testimony must include "a rationale and complete explanation for [her] opinions" and that she "should be prepared to testify from personal knowledge gained from vocational surveys of businesses and industries . . . and from other current vocational resource materials." (AR 13-14; see AR 133-34). Thus, the VE "was duly notified that she must provide support for her opinions." (AR 14). Further, the ALJ determined that "[n]othing in the law, regulations, or HALLEX requires vocational experts to produce labor market surveys or publications created or used in their professional capacity."[3] (AR 14). Nevertheless, the ALJ noted that pursuant to HALLEX I-2-6-74C, Plaintiff's counsel "was given an extensive opportunity to question the [VE] at the hearing." (AR 14).

---

[3] The Commissioner of Social Security's Hearings, Appeals, and Litigation Manual ("HALLEX") is an internal Agency manual. Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008).

The ALJ determined that the VE's testimony was consistent with the DOT and gave her opinion "significant weight." (AR 28). Because many of Plaintiff's objections in her post-hearing memorandum "overlap or cover the same issues as one another," the ALJ did not "specifically address every single objection, but rather, . . . address[ed] the objections according to their general themes." (AR 28). As relevant to this matter, the ALJ concluded:

> [Plaintiff's] representative further objected to the jobs identified by Dr. Jesko in response to the hypothetical [RFC] because the job duties and requirements exceed the scope of the hypothetical [RFC]. Dr. Jesko's professional knowledge and experience along with her reliance on publications that the agency has taken judicial notice, including the [DOT] and the companion publications form a sufficient basis for the [ALJ] to rely upon her opinion. The totality of the evidence, including the longitudinal treatment notes, demonstrates [Plaintiff] is capable of performing the jobs identified by Dr. Jesko subject to the [RFC] adopted in this decision.

(AR 29) (citations omitted).

## C.   **Analysis**

### 1.   **The ALJ Properly Ruled On Plaintiff's Objections**

Plaintiff contends that the ALJ "never acknowledged or discussed" her objection that the jobs relied upon by the ALJ to deny her benefits are not " 'unskilled' based on up to date and reliable job information as to how these positions are performed in the economy today." (Dkt. No. 15-2 at 5). Plaintiff argues that "pursuant to HALLEX § I-2-5-74 (2016), when a claimant raises objections about a [VE's] opinion regarding the step 5 inquiry, the ALJ is obligated to rule on the objection; the ALJ may do so on the record during the hearing or discuss any ruling in the decision, as circumstances dictate."[4]   (Id. at 7).   Plaintiff contends that an ALJ is required to "follow all Agency policies, including HALLEX, in decision-making."  (Id.); see SSR 13-2p, at *15 ("We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and

---

[4] Plaintiff's reference to HALLEX § I-2-5-74 is a reference to the current rule, which requires the ALJ to ask if there are objections to the VE's testimony and to rule on the objections on the record or in the body of the ALJ's decision.  At the time the ALJ made her decision in this case it stated, "If a claimant raises an objection about a VE's opinion, the ALJ must rule on the objection and discuss any ruling in the decision."  HALLEX § I-2-5-55 (effective September 28, 2005, and changed effective June 16, 2016, by Transmittal No. I-2-174).  See Moffit v. Berryhill, No. CV 17-4015, 2018 WL 276770, at *4 (D. Kan. Jan. 3, 2018).

Litigation Law manual (HALLEX).")  However, the Ninth Circuit has noted that "HALLEX is strictly an internal Agency manual, with no binding legal effect on the Administration or this court," although HALLEX is entitled to "respect" under Skidmore v. Swift & Co., 323 U.S. 134 (1944).  Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008).  Plaintiff's argument on this issue is not persuasive.

The ALJ sufficiently addressed Plaintiff's objections.  There is simply no requirement that an ALJ must address each objection in a discrete manner.[5]  Instead, the ALJ acknowledged that Plaintiff was objecting to the jobs identified by the VE because "the job duties and requirements exceed the scope of the hypothetical [RFC]."  (AR 29).  This is a direct quote from Plaintiff's post-hearing memorandum (AR 270) and clearly refers to Plaintiff's contentions that the jobs identified by the VE are not unskilled and include the operation of moving machinery (AR 268-69).  The ALJ overruled Plaintiff's objections, relying on the VE's knowledge and expertise, along with publications of which the Agency has taken judicial notice, including the DOT, to determine whether that are jobs that Plaintiff can perform.  (AR 29); Shaibi v. Berryhill, 883 F.3d 1102, 1109-10 (9th Cir. 2017), as amended (Feb. 28, 2018) ("Our precedent holds . . . that an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the

---

[5]  Plaintiff cites to Parker v. Colvin, No. 14-35794 (9th Cir. Mar. 12, 2015), for the proposition that "if a claimant raises an objection about the VE's opinion, the ALJ must rule on the objection and discuss any ruling in the decision."  (Dkt. No. 15-2 at 8).  This Parker cite, however, is to an order adopting the parties' "Stipulated Motion for Remand."  As such, it is without any precedential value in this matter.

national economy, and need not inquire sua sponte into the foundation for the expert's opinion." (citing Bayliss, 427 F.3d 1211, 1218 (9th Cir. 2005); Johnson v. Shalala, 60 F.3d 1428, 1435–36 (9th Cir. 1995))). Therefore, the ALJ has fully satisfied any requirement to address Plaintiff's objections to the VE's testimony.

**2. The ALJ's Step-Five Determination Was Supported By Substantial Evidence**

Plaintiff contends that the ALJ relied on jobs information that was neither current nor reliable. (See Dkt. No. 15-2 at 9–12). Plaintiff argues that "up-to-date and reliable job descriptions at the [DOL's] website (O*NET) reveals that all three of the above jobs named by the [VE] (and relied on to deny benefits) are not unskilled (as was patently required by the ALJ's RFC finding) and therefore do not meet the ALJ's burden of proof to show that there are jobs Plaintiff can do, given his [sic] RFC, and vocational factors." (Id. at 9-10).

At step five, the Commissioner bears the burden "to identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations." Johnson, 60 F.3d at 1432. "In making this determination, the ALJ relies on the DOT, which is the [Agency's] primary source of reliable job information regarding jobs that exist in the national economy." Zavalin v. Colvin, 778 F.3d 842, 845–46 (9th Cir. 2015) (citation omitted); see 20 C.F.R. §

404.1566(d)(1) (noting that the Agency "will take administrative notice of reliable job information available from various governmental and other publications," including the DOT); SSR 00-4p, at *2 ("In making disability determinations, [the Agency relies] primarily on the DOT . . . for information about the requirements of work in the national economy."). The Agency may also take judicial notice of reliable job information available in County Business Patterns, published by the Bureau of the Census; Census Reports, also published by the Bureau of the Census; Occupational Analyses, prepared for the Social Security Administration by various State employment agencies; and the OOH, published by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d)(2)-(5). Moreover, "[a]n ALJ may take administrative notice of any reliable job information, including information provided by a VE." Bayliss, 427 F.3d at 1218.

Here, the VE based her testimony on a combination of sources, including the DOT, the OOH, county business patters, and census reports. (AR 47). Further, the VE asserted that she was analyzing current job information. (AR 61). Finally, the VE testified that she regularly conducts independent studies to verify the reliability of the information she uses to make her occupational determinations. (AR 65-66). Thus, because the VE's testimony was reasonable and reliable, the ALJ properly gave significant weight to the VE's opinion. (AR 28); see Bayliss, 427 F.3d at 1218 (The "VE's recognized expertise provides the necessary foundation for his or her testimony" regarding reliable job information; "no

additional foundation is required."); 20 C.F.R. § 404.1566(e) (ALJs may use VE to determine occupational issues).

Nevertheless, Plaintiff contends that because the DOT's information is outdated, the ALJ should have rejected the VE's opinion in favor of using the DOL's O*NET database. (Dkt. No. 15-2 at 10-11). Plaintiff asserts that it is a "well-known fact" that the DOT "is an obsolete and static database" that is no longer being updated and argues that "the type of information once provided by the DOT is now provided . . . via O*NET." (Id. at 10). Plaintiff further contends that "all of the jobs offered by the [VE] . . . are performed differently in today's workforce than described in the DOT; more specifically, while when they were last updated in the DOT they were unskilled jobs, now they are skilled jobs [as classified in O*NET]." (Id. at 11-12).

The Court disagrees with Plaintiff's contentions. As discussed above, "[i]n making disability determinations, [the Agency relies] primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." SSR 00-4p, at *2. The Agency also relies on VEs at step five "to resolve complex vocational issues." Id. While Agency guidelines require an ALJ to investigate and elicit a reasonable explanation for any conflict between the DOT and VE testimony, SSR 00-4p, at *2; see Shaibi, 883 F.3d at 1109, the guidelines do not require the ALJ to resolve conflicts between VE testimony and other vocational publications or information, Moffit v. Berryhill, No. CV 17-4015, 2018 WL 276770, at *6 (D. Kan.

22

Jan. 3, 2018) (no requirement for ALJ to resolve conflict between DOT and O*NET); cf. Shaibi, 883 F.3d at 1109 ("[W]e can find no case, regulation, or statute suggesting that an ALJ must sua sponte take administrative notice of economic data in the CBP or the OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT . . . [b]ut Shaibi cites to no authority suggesting that the same is true for the CBP and OOH."); Gonzalez v. Berryhill, No. CV 17-5402, 2018 WL 456130, at *3 (C.D. Cal. Jan. 17, 2018) ("an ALJ is under no obligation to consult the OOH or to attempt to reconcile conflicts between the OOH and vocational expert testimony") (citing cases). Moreover, the Agency commissioned the Occupational Information Development Advisory Panel ("OIDAP") to review a report by the National Academy of Sciences ("NAS") regarding the feasibility of using the O*NET database. See OIDAP, Finding Report: A Review of the National Academy of Sciences Report A Database For A Changing Economy: Review Of The Occupational Information Network (O*NET) (June 28, 2010), available at http://ssa.gov/oidap/Documents/ (last visited Feb. 28, 2018). In its first finding, the OIDAP agreed with the NAS "that the O*NET in its current form is not suitable for disability adjudication." Id., Executive Summary, at 1.

Further, even if the O*NET classifies these occupations as semiskilled to skilled, it does not necessarily indicate that the jobs identified by the DOT as unskilled do not exist. Indeed, the VE testified that based on her thirty-years of expertise and her analysis of the current job market, such unskilled jobs do exist

in the national economy.  (AR 51-55, 58).  Similarly, the VE was aware of Plaintiff's restriction regarding moving machinery when she testified that Plaintiff could perform the jobs of cleaner/sweeper and floor waxer and that her testimony was consistent with the DOT.  (AR 51, 53-54, 56).  The ALJ could reasonably rely on the VE's testimony that despite Plaintiff's moving machinery restriction, she could still perform these jobs. See Cattano v. Berryhill, 686 F. App'x 408, 411 (9th Cir. 2017) ("The ALJ reasonably relied on the vocational expert's testimony that Cattano could perform work as a packager or inspector. Although the activities of packagers and inspectors include reaching, the vocational expert was aware that Cattano could not reach overhead with his right arm when he testified that Cattano could still perform those jobs.  Moreover, when explicitly asked by the ALJ, the vocational expert testified that his recommendations were consistent with the Dictionary of Occupational Titles."); see also Distasio v. Shalala, 47 F.3d 348, 350 (9th Cir. 1995) ("vocational experts can testify whether particular applicants for disability benefits would be able to perform subcategories of jobs within the DOT").[6]

---

[6] Even if there were an unresolved conflict between the DOT job descriptions of sweeper/cleaner and floor waxer involving use of moving machinery that Plaintiff's RFC prohibited, the error would be harmless and no remand is required.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (the court "may not reverse an ALJ's decision on account of an error that is harmless").  If the Court excluded these two occupations, the error would be harmless because the ALJ still found that there were 38,500 laundry jobs in the national economy that Plaintiff could perform.  The Ninth Circuit has found 38,500 to be a significant number.  (AR 28, 54);

Finally, the ALJ is responsible for resolving any conflicts in the evidence. <u>Parra v. Astrue</u>, 481 F.3d 742, 750 (9th Cir. 2007) ("resolution of conflicts in the testimony are functions solely for the agency") (citation omitted). In light of Dr. Jesko's "extensive education, training, and experience," the ALJ found her well qualified to serve as a VE in this matter. (AR 28). The ALJ found that Dr. Jesko's multifactorial approach, using multiple sources, verified the accuracy of the information she provided. (AR 28-29). The ALJ further concluded that the VE's "approach to obtaining job numbers in the national economy is reasonable and consistent with the requirements of the regulations." (AR 29). Indeed, Plaintiff did not object to Dr. Jesko serving as the VE. (AR 50). On the other hand, the ALJ noted that the vocational information provided by Plaintiff was neither impartial nor from anyone with vocational expertise. (AR 28); <u>see Crane v. Barnhart</u>, 224 F. App'x 574, 578 (9th Cir. 2007) (where ALJ relied on a "proper source for [jobs] information - the VE's testimony, based on the DOT" - ALJ not required to "consider documentation [claimant] submitted regarding number of available jobs"). Accordingly, the ALJ's decision to overrule Plaintiff's objections to the VE's testimony is supported by substantial evidence. <u>See Bayliss</u>, 427 F.3d at 1218 (because a VE's "recognized expertise provides the necessary foundation for his or her testimony," the ALJ may take administrative notice of the job information provided by the VE); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002)

see <u>Gutierrez v. Comm'r of Soc. Sec.</u>, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs are a significant number).

("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 18, 2018

```
                                    /S/
                         _____
                         SUZANNE H. SEGAL
                         UNITED STATES MAGISTRATE JUDGE
```